IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 8, 2008

## OTIS MORRIS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-07964    Paula Skahan, Judge**

_____

**No. W2007-00818-CCA-R3-PC  - Filed April 11, 2008**

_____

The petitioner, Otis Morris, appeals the post-conviction court's denial of his petition for post-conviction relief.  On appeal, he argues that he entered into an unknowing and involuntary guilty plea to the charge of attempted second degree murder.  After a thorough review of the record and the parties' briefs, the judgment of the post-conviction court denying post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which David G. Hayes and Alan E. Glenn, JJ. joined.

Patrick E. Stegall (on appeal), and Tim Williams (at trial), Memphis, Tennessee, for the appellant, Otis Morris.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris Scruggs and Nicole Germain, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

In January 2006, the petitioner pled guilty pursuant to a plea agreement to two counts of aggravated robbery and one count of felon in possession of a firearm.  The defendant also entered an *Alford* plea to one count of attempted second degree murder.  All other charges were dismissed via nolle prosequi.  As a result of the plea agreement, the petitioner received a total effective sentence of sixteen years.

At the petitioner's guilty plea hearing, the factual basis underlying the petitioner's guilty pleas was stipulated as follows:

[O]n August 19th of 2001, at approximately 1:00 a.m. . . . . the victim, Xavier Moore, was confronted and robbed of his wallet, credit cards, and keys by a male armed with a handgun in the parking lot of the K-mart.

The [male] suspect left the scene with three other people. The victim was contacted by his credit card company; [and] was advised that his credit card was used at the Laquinta Inn at 42 South Camilla.

Uniform officers went there . . . , and [found] males [present], one of whom was Otis Morris, the defendant. . . .

The victim . . . was shown a photospread and did identify the defendant, Otis Morris, as being the man who robbed him in the K-mart parking lot. And this did happen in Shelby County.

[O]n August 12th of 2001, the victim, Makiel Simmons was riding with [another] male . . . when [a] suspect pulled into the rear of 4045 Summer Avenue, Memphis/Shelby County. Once in the rear of those apartments, the suspect along with several others pulled guns on the victim and robbed him . . . . [T]he victim ran and shots were fired at him, but he was not hit. His money and diamond ring and a handgun were taken, the victim was shown a photospread . . . and he identified the defendant, Otis Morris, as being the one responsible for the robbery.

On May 21st, of 2003, [police] officers responded to a shooting call at 4116 St. Pierre in Memphis, Shelby County, and they observed the victim, a Ms. Takesha Karet sitting on her front step bleeding from her stomach. She advised, in her written statement, that the defendant, Otis Morris, her ex-boyfriend had shot her. She said he came to her residence; they exchanged words. He attempted to attack her when she ran into a bedroom to grab a hammer. He took the hammer from her, pulled her into the living room, pushed her to the floor, and when she was trying to get up to defend herself, he reached into his right front pocket and pulled out a weapon and threatened to kill her and then fired three shots.

The petitioner filed a timely pro se petition for post-conviction relief. Thereafter, post-conviction counsel was appointed, an amended petition was filed, and an evidentiary hearing was held. At the hearing, the petitioner first explained through post-conviction counsel that he was challenging his guilty plea for attempted second degree murder. The petitioner then testified that his ex-girlfriend was violent, abusive, and had assaulted him several times. Therefore, when he was charged with the attempted murder of his ex-girlfriend, he wanted to present a theory of self-defense at trial. He asked his trial counsel to pursue this theory, and counsel hired a private investigator to investigate. However, the petitioner complained that he ended up pleading guilty to attempted second degree murder because counsel told him he was "f**ked".

The petitioner testified that he did not get along with counsel who had been hired by his mother. He complained that he had tried to get different counsel, but the trial court would not allow counsel to be replaced. The petitioner stated that counsel coerced him into pleading guilty by telling him that he was facing a lot of criminal charges, and if he did not get convicted on this charge he would be convicted on the others. Counsel also informed him that he faced ninety years if convicted of all the charges. According to the petitioner, counsel strongly recommended the state's plea offer and thought it reasonable. Counsel asked him if he would take eight years. The petitioner said he would. However, the petitioner thought he would be receiving eight years for all the charges against him. The petitioner admitted that counsel told him that he would serve two eight-year-sentences consecutively, but the petitioner claimed that he did not understand what that meant.

The petitioner testified that he did not want to plead guilty to attempted second degree murder, so he entered an *Alford* plea to the charge even though he did not understand what it meant. He did not ask the judge about his *Alford* plea because counsel told him that asking questions would make the judge mad. The petitioner reiterated that when he entered his pleas he did not understand he was agreeing to consecutive sentencing – i.e. that he would receive a total sentence of sixteen years. The petitioner acknowledged that counsel had him undergo a mental evaluation. On cross-examination, the petitioner admitted that he had a lengthy criminal record, and he had pled guilty to different criminal offenses many times. He acknowledged that he was facing up to sixty years on the aggravated robbery charges alone. He acknowledged that the trial court informed him at the plea hearing that he was receiving a sixteen-year sentence. However, the petitioner claimed that he was exhausted at the plea hearing and was not paying attention. The petitioner also noted that he was taking some medication.

The petitioner's trial counsel testified that he had practiced law since 1981 and had handled hundreds of criminal cases. He was first approached by the petitioner's mother to be retained but she did not have any money to pay him. He was then appointed by the court to represent the petitioner. Counsel recalled that he thoroughly investigated the petitioner's case. He photographed all of the state's evidence, obtained discovery materials, and mailed copies to the petitioner. Counsel said that the state's first offer was approximately forty years for all charges. Counsel did not recommend this offer but gave it to the petitioner to consider. Later, counsel was able to obtain funds to hire an investigator. From the investigation, counsel learned that the petitioner's ex-girlfriend had some issues and might not be a good witness for the state at trial should the state proceed to prosecute on the attempted second degree murder charge. Counsel said that the investigator did a thorough job and met with the petitioner several times. Counsel recounted that he and the investigator met with the state prosecutor and discussed potential weaknesses in the attempted second degree murder case in an effort to get a better plea offer from the state. Eventually, the state offered sixteen years in return for pleading guilty to the charges of aggravated robbery, felon in possession of a firearm, and attempted second degree murder.

Counsel testified that the petitioner filed a complaint against him during his representation. The gist of the complaint was that counsel was not visiting the petitioner in jail as frequently as the petitioner wanted. Counsel said he later discovered that the petitioner's mental state varied,

depending on whether he took his medication. Counsel noted that the petitioner was given a mental evaluation and the petitioner was deemed competent. Counsel recalled that a few days before the petitioner's first trial, the petitioner called him. The petitioner told counsel that he had a friend who went to trial and received seventy years for aggravated robbery, therefore, he was willing to accept the state's plea offer. The petitioner wanted to go to trial on the attempted murder charge, but the plea offer was a packaged deal. Counsel said that he did not coerce the petitioner, but he did recommend the plea offer. Counsel told the petitioner that he faced more time on just one of the aggravated robbery charges than the total time he would get if he took the state's plea offer. Counsel recalled that the state had a strong case against the petitioner in one of the aggravated robbery cases. Counsel said he explained the charges against the petitioner and the possible sentences the petitioner might receive. Counsel also said that the petitioner understood he was pleading to sixteen years as a standard offender. Counsel noted that the plea offer was a good one considering the petitioner's extensive criminal record. Counsel said he was fully prepared to take the petitioner's cases to trial.

**ANALYSIS**

As his sole issue on appeal, the petitioner contends that his *Alford* plea for attempted second degree murder was unknowing and involuntary because "relations between him and his attorney had broken down to where he did not fully understand what he was doing."

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence in the appellate record preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is de novo with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

A petitioner may successfully contest a conviction when his or her guilty plea is unknowing or involuntary. *See* Tenn. Code Ann. § 40-30-103; *Boykin v. Alabama*, 395 U.S. 238 (1969); *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2002). A plea is not voluntary or knowing if it results from ignorance, misunderstanding, coercion, inducements or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). When determining the knowing and voluntary nature of the guilty plea, the court must look to various circumstantial factors including:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904. Also, a defendant who wishes to enter a plea but does not wish to acknowledge guilt may, in the court's discretion, plead guilty based on a representation that the plea is in the defendant's best interest. This plea is commonly known as an *Alford* plea and is acceptable upon a showing that it is voluntarily and intelligently entered. *North Carolina v. Alford*, 400 U.S. 25 (1970). The standard is and remains "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31; *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In its order, the post-conviction court found the following:

> Petitioner argues that counsel failed to explain to him the significance and consequences of pleading guilty under *Alford*. Petitioner maintains his innocence and claims that he would not have submitted the plea if he had known that he would have to serve the eight-year sentence consecutively with the other sentences. Petitioner denies knowing that the sentence he was receiving was for a total of sixteen years. During the plea colloquy, however, both the prosecutor and [the trial court] stated that Petitioner was being sentenced to sixteen years. . . . If Petitioner had proceeded to trial and was found guilty on all the charges listed in both indictments, he could have faced an effective sentence of 132 years. . . . Entering a plea of guilty was an intelligent choice, particularly in light of the evidence against him and his lengthy criminal record.

> . . . .

> Petitioner contends that the pressures of the pending charges and the breakdown in communication between him and [trial counsel] prevented him from making an intelligent decision. Petitioner's statements at the plea colloquy indicate that he understood that he could receive an effective ninety-year sentence if he were to take the case to trial and was convicted. . . . He acknowledged that it was in his "best interest" to plead guilty, even though he did not completely agree with the State's version of the facts. "That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." *North Carolina v. Alford*, 400 U.S. 25, (U.S. 1970). Petitioner has failed to show by clear and convincing evidence that he did not understand the consequences of his plea.

In the instant case, the record reflects that the state's plea offer was a packaged deal, which included the charges for aggravated robbery as well as the charge for attempted second degree murder. The record also reflects that the petitioner faced a considerable amount of jail time on each charge given his prior criminal record. The transcript of the plea hearing reflects that the petitioner was instructed by the trial court on the charges to which he would be entering pleas of guilt. The petitioner was also informed that he would receive a total effective sentence of sixteen years. The transcript further reflects that the court questioned the petitioner before accepting his pleas. In response to these questions, the petitioner informed the court that his pleas were free and voluntary. The petitioner also said he was entering an *Alford* plea on the attempted second degree murder charge due to the fact that he might get ninety years if the case proceeded to trial. Therefore, in summation, the record does not preponderate against the post-conviction court's findings that the petitioner's guilty pleas were a "voluntary and intelligent choice among the alternative courses of action open to the [petitioner]." *Alford*, 400 U.S. at 31. Consequently, the petitioner is not entitled to relief.

## CONCLUSION

Based on the record and the foregoing reasoning, we affirm the judgment of the post-conviction court.

_____
J.C. McLIN, JUDGE